UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERTHA DOMINGUEZ,<br><br>    Plaintiff,<br><br>  v.<br><br>SONESTA INTERNATIONAL HOTELS CORPORATION,<br><br>    Defendant. | Case No. 22-cv-03027-JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 24 |

## I.   INTRODUCTION

In this putative class action, Plaintiff Bertha Dominguez asserts various wage and hour claims under the California Labor Code, including a claim for civil penalties under the Private Attorneys General Act ("PAGA"), against her former employer, Sonesta International Hotels Corporation ("Sonesta"). Presently before the Court is Sonesta's Motion to Compel Arbitration ("Motion"). The Court finds that the Motion is suitable for determination without oral argument and therefore **vacates the motion hearing set for January 6, 2023 at 9:30 a.m.** pursuant to Civil Local Rule 7-1(b). **The Case Management Conference set for the same date will be held at 2:00 p.m. instead of 9:30 a.m.** For the reasons stated below, the Motion is GRANTED in part and DENIED in part.[1]

## II.   BACKGROUND

Plaintiff alleges that she worked for Sonesta as a housekeeper/ housekeeper supervisor at Sonesta ES Suites San Francisco Airport from approximately November 2020 through January 7, 2022. First Amended Complaint ("FAC") ¶ 11. She does not dispute that as part of the

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

1  onboarding process for that job, she signed an arbitration agreement entitled "Mutual Agreement
2  to Resolve Disputes and Arbitrate Claims" ("Arbitration Agreement").  *See* Declaration of
3  Jennifer Rausch in Support of Defendant Sonesta International Hotels Corporation's Motion to
4  Compel Arbitration ("Rausch Decl.") ¶16 & Ex. B (Arbitration Agreement);  Opposition at 3
5  ("Here, Defendant requires aggrieved employees who are new hires to open and digitally sign a
6  'Mutual Agreement to Resolve Disputes and Arbitrate Claims' . . . as part of the onboarding
7  process.") (citing Rausch Decl. ¶ 13).
8  Under the Arbitration Agreement, Plaintiff and Sonesta agreed to submit all employment-
9  related disputes to arbitration.  In particular, the agreement states as follows:

> You and the Company are required to follow the grievance process set forth in Section II(A) below and then, if necessary, the arbitration process set forth in Section II(B) below with respect to any claims, including any claims that could be brought in a court.
>
> For purposes of this Agreement, the term "claims" means any and all disputes, claims or controversies arising out of your employment or the termination of your employment which could be brought in a court, including, but not limited to, claims under the Age Discrimination in Employment Act; Title VII of the Civil Rights Act of 1964; the Fair Labor Standards Act; the Family and Medical Leave Act; the Americans with Disabilities Act of 1990; Section 1981 through 1988 of Title 42 of the United States Code; state and local anti-discrimination laws; and any other federal, state, or local law, ordinance or regulation, and claims based on any public policy, contract, tort, or common law and any claim for costs, fees, and other expenses or relief, including attorney's fees. Claims subject to this Agreement shall not include: (i) claims relating to workers' compensation benefits; (ii) unemployment compensation benefits; (iii) claims with respect to any stock plan, employee pension or welfare benefit plan if that plan contains some form of specific grievance or other procedure for the resolution of disputes under the plan; (iv) claims filed with a federal, state, or local administrative agency (e.g., the NLRB, EEOC, etc.) or reporting of criminal activity to appropriate public authorities; and (v) claims covered by a written employment contract signed by both parties which provides for a specific, different form of dispute resolution in accordance with that contract's terms.

Rausch Decl., Ex. B (Arbitration Agreement) § I.  The Arbitration Agreement designates National Arbitration and Mediation, Inc. ("NAM") to arbitrate all disputes under the Agreement and provides that "the arbitration shall be conducted in accordance with [NAM's] then current rules for the resolution of employment disputes[,]" which are available to employees upon request to the

Human Resources Department. *Id*. § II(B)(i) & (ii).

The Arbitration Agreement provides that Sonesta will pay "100% of the Arbitration Firm's fees as well as the arbitrator's fees and Expenses[,]" and "100% of any filing fees that the Arbitration Firm may charge to initiate arbitration." *Id.* § II(B)(iv). "Each party [must] otherwise bear its own costs and fees associated with the arbitration including, but not limited to, attorneys' fees and the costs and fees of responding to discovery requests." *Id.* The Arbitration Agreement further provides that "the arbitration will be held at a mutually convenient time and place within 50 miles of the [Sonesta] location at which [the employee] most recently [is or was] working." *Id.* § II(B)(v).

The Arbitration Agreement also includes a class action waiver, contained in a separate section entitled "Class/Collective Action Waiver." *Id.* § III(H.). That section provides that the parties "agree to waive all rights to bring, or be a party to, any class or collective claims against one another and agree to pursue claims on an individual basis only." *Id.* § III(A). In addition, above the signature line, the Arbitration Agreement states, in bold and all capital letters:

> By your signature below, you acknowledge receipt of this dispute resolution and arbitration agreement. You also acknowledge that this agreement is a legal document which, among other things, requires you to grieve, and then to arbitrate, all claims you may have now or in the future with the company, which otherwise could have been brought in court. **YOU ALSO ACKNOWLEDGE THAT YOU HAVE HAD SUFFICIENT TIME TO READ AND UNDERSTAND THE TERMS OF THIS AGREEMENT AND THAT BY RECEIPT OF THIS AGREEMENT, THE COMPANY HAS INFORMED YOU THAT YOU HAVE A RIGHT TO SEEK LEGAL COUNSEL REGARDING THE MEANING AND EFFECT OF THIS AGREEMENT. . .**
>
> **BY SIGNING BELOW YOU ARE GIVING UP YOUR RIGHTS TO INITIATE OR PARTICIPATE IN CLASS ACTIONS AFFECTING YOUR EMPLOYMENT BY THE COMPANY**

*Id.* § III(H).

Under the Arbitration Agreement, "[t]he Parties acknowledge and agree that the Company is involved in transactions involving interstate commerce and that the Federal Arbitration Act shall govern any arbitration pursuant to this Agreement, including but not limited to the Agreement's scope, interpretation and application." *Id.* § III(F). The Arbitration Agreement also includes a

clause that permits the deletion of any unenforceable provision as follows:

> In the event that any provision of this Agreement shall be construed to be unlawful or unenforceable, and if the offending provision can be deleted without affecting the primary intention of the parties or can be reformed to effect the primary intention of the parties as expressed herein, then the offending provision shall be so deleted or reformed and the remainder of this Agreement shall remain in full force and effect as written.

*Id.* § III(C).

Along with the Arbitration Agreement, Plaintiff also received a document entitled "Important Notice Regarding Your Employment With Sonesta International Hotels Corporation" ("Notice"). Rausch Decl., Ex. B; Opposition at 3 ("[O]ne of the documents Plaintiff and other aggrieved employees received is entitled "Important Notice Regarding Your Employment With Sonesta International Hotels Corporation[.]"). The Notice states that employees are "required to agree to participate in Sonesta's dispute resolution and arbitration process" as a "condition of [their] employment" and that "[b]ecause participation in the dispute resolution and arbitration process is one of the conditions of [their] employment with Sonesta, if [they] decide not to agree to the terms of the Agreement, Sonesta will consider [their] employment application to be withdrawn." Rausch Decl., Ex. B.

In the Motion, Sonesta argues that "Plaintiff's claims fall squarely within the scope of her binding and enforceable agreement to arbitrate" and therefore, that the Court should compel arbitration of those claims on an individual basis and dismiss all class and representative claims without prejudice. Motion at 11. In support of this assertion, Sonesta argues that the Arbitration Agreement is governed by the FAA, which requires that the agreement be enforced so long as there is a valid agreement to arbitrate the dispute, and that that requirement has been satisfied. *Id.* at 14. In particular, Sonesta asserts, "the evidence plainly demonstrates that Plaintiff 'knowingly, voluntarily and freely agree[d] to accept and be bound by the terms of this Agreement' after acknowledging she 'had sufficient time to read and understand [its terms].'" *Id.* (citing Rausch Decl. ¶ 16 & Arbitration Agreement § III(H)). In addition, it asserts, it is "indisputable the Agreement encompasses all of Plaintiff's claims asserted in the Complaint, as it expressly applies to 'any and all disputes, claims or controversies arising out of your employment or the termination

4

of your employment which could be brought in a court.'" *Id.* (citing Rausch Decl. ¶ 6 & Arbitration Agreement § I.)  Sonesta further asserts that the class action waiver is enforceable and that under the United States Supreme Court's recent decision in *Viking River, Inc. v. Moriana*, 142 S.Ct. 1906 (2022), Plaintiff's individual PAGA claims must be arbitrated while her representative claims must be dismissed. *Id.* at 17-19.

Plaintiff opposes the Motion, arguing that the Arbitration Agreement is unconscionable and therefore unenforceable under the FAA.  Opposition at 3-5.  Plaintiff further asserts that while the FAA preempts California's prohibition on class action waivers, it does not preempt California's bar against waivers of the right to bring representative PAGA actions.  *Id.* at 5 (citing *Chris Mills v. Facility Solutions Group, Inc.*, 2022 WL 16569298, at *12 (Cal. Ct. App. Nov. 1, 2022)).  Moreover, Plaintiff contends, this Court need not dismiss her representative claims under *Viking River* because in that case "the United States Supreme Court exceeded their authority and, in the process, misinterpreted PAGA's standing requirements." *Id.* at 7.  In particular, she argues, the California Supreme Court made it clear in *Kim v. Reins International California, Inc.,* 9 Cal.5th 73 (2020) that standing to bring representative PAGA claims does not require that the plaintiff suffer an injury giving rise to an individual claim.  *Id.* at 7-8.  To the extent the United States Supreme Court reached a different conclusion, Plaintiff contends, that interpretation of California law is not binding here.  *Id.*

Finally, Plaintiff argues that even if the Court finds that the Arbitration Agreement is valid and enforceable as to her individual claims, it should stay the case pending the California Supreme Court's decision in *Adolph v. Uber Technologies, Inc.*, 2022 WL 1073583 (Cal. Ct. App. Apr. 11, 2022), review granted (July 20, 2022) Case No. S274671.  In that case, the trial court held that the plaintiff's PAGA claim was not arbitrable under *Iskanian (Auto Equity Sales, Inc. v. Superior Court*, 57 Cal.2d 450, 455 (1962) ("*Iskanian*") and the court of appeal – which ruled on the appeal after *Viking River* was briefed but before the Supreme Court issued its decision – affirmed, explaining that "[u]nless and until the United States Supreme Court or the California Supreme Court directly overrules it, the courts of this state must follow the rule of *Iskanian* . . . , which establishes that the trial court did not err by concluding that the initial issue of whether Adolph can

5

1 pursue a PAGA claim as an aggrieved employee must be decided by the trial court, not an
2 arbitrator. The California Supreme Court granted review after the Supreme Court issued its
3 opinion in *Viking River*, on June 15, 2022.

**III.  ANALYSIS**

    **A.  Whether the Parties' Dispute Falls Within the Scope of a Valid Arbitration Agreement**

        **1.  Legal Standards Governing Enforcement of Arbitration Provisions under the FAA**

Under the Federal Arbitration Act ("FAA"), a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Because arbitration is a matter of contract, the question of arbitrability, that is, "whether the parties have submitted a particular dispute to arbitration[,]" is, "'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (quoting *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986)). The court's role in addressing a question of arbitrability is "limited to determining (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys. Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

The FAA "was created to counter prevalent judicial refusal to enforce arbitration agreements . . . and has been interpreted to embody 'a liberal federal policy favoring arbitration.'" *Mortenson v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), and citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). Thus, the Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24–25.

Nonetheless, "[a]rbitration is strictly a matter of consent and thus is a way to resolve those

disputes—but only those disputes—that the parties have agreed to submit to arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (internal quotation marks omitted). Consequently, courts may apply the "presumption favoring arbitration . . . only where it reflects, and derives its legitimacy from, a judicial conclusion that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate was validly formed and . . . is legally enforceable and best construed to encompass the dispute." *Id*. at 303.

Unconscionability may invalidate an arbitration agreement, but "the doctrine's application to arbitration agreements must rely on the same principles that govern all contracts." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125 (2019). "The degree of unfairness required for unconscionability must be as rigorous and demanding for arbitration clauses as for any other contract clause." *Id*. "A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree [procedural unconscionability] and the contract contains terms that are unreasonably favorable to the other party [substantive unconscionability]." *Id*. (citation omitted). These two factors are evaluated on a sliding scale: "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to" conclude that the term is unenforceable . . . . Conversely, the more deceptive or coercive the bargaining tactics employed, the less substantive unfairness is required." *Id*. (citations omitted).

"Procedural unconscionability concerns the manner in which the contract was negotiated and the circumstances of the parties at that time. It focuses on factors of oppression and surprise. The oppression component arises from an inequality of bargaining power of the parties to the contract and an absence of real negotiation or a meaningful choice on the part of the weaker party." *CarMax Auto Superstores California LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1111 (C.D. Cal. 2015).  Arbitration agreements that are presented to employees on a "take it or leave it" basis, as a condition of employment, are procedurally unconscionable because the employee has no meaningful opportunity to negotiate or opt out of such an agreement. *Armendariz v. Foundation Health Psychcare Services, Inc*. 24 Cal. 4th 83, 114-15 (2000).

"Substantive unconscionability examines the fairness of a contract's terms." *OTO, L.L.C. v. Kho*, 8 Cal. 5th at 129–30.  "[U]nconscionability doctrine is concerned not with 'a simple old-

fashioned bad bargain' [citation], but with terms that are 'unreasonably favorable to the more powerful party.'" *Id.* (quoting *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1145 (2013)). "They may include fine-print terms, unreasonably or unexpectedly harsh terms regarding price or other central aspects of the transaction, and terms that undermine the nondrafting party's reasonable expectations." *Id.* (citations omitted).

### 2. Discussion

Plaintiff contends the Arbitration Agreement is void and therefore unenforceable because it is unconscionable. The Court finds this argument unpersuasive.

There is no dispute that Plaintiff was required to sign the Arbitration Agreement as a prerequisite of employment by Sonesta. This fact alone is sufficient to establish some degree of procedural unconscionability. *See Davis v. Kozak,* 53 Cal. App. 5th 897, 907 (2020) (finding that where large corporation required mid-level manager to sign an arbitration agreement as a condition of employment the unequal bargaining power was "apparent from the parties' relationship"). However, in the absence of "other sharp practices on the part of [Sonesta], such as lying, manipulating, or placing [Plaintiff] under duress," such "adhesion establishes only a 'low' degree of procedural unconscionability." *Id.* (citing *Serpa v. California Surety Investigations, Inc*, 215 Cal. App. 4th 695, 704 (2013)). Thus, to establish that the Arbitration Agreement is void on the basis of unconscionability, Plaintiff must point to some significant substantive unconscionability. She has not done so.

Plaintiff points to only one feature of the Arbitration Agreement that she contends is substantively unconscionable, asserting that the definition of "claims" subject to arbitration ("any and all disputes, claims or controversies arising out of your employment or the termination of your employment which could be brought in court") is overbroad, purporting to require arbitration of claims that are not subject to arbitration. Opposition at 4. In particular, she points to claims "brought by the EEOC[,]" *id*. (citing *E.E.O.C. v. Waffle House, Inc*., 534 U.S. 279 (2002)), and PAGA claims, *id.* (citing *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal.4th 348 (2014)).

In *E.E.O.C. v. Waffle House, Inc.*, the Supreme Court made clear that the existence of an

8

arbitration agreement between private parties does not materially changes the EEOC's statutory function or the remedies that are otherwise available or limit its ability to bring an enforcement action. 534 U.S. at 288-296.  Here, the Arbitration Agreement, on its face, applies only to claims between Plaintiff and Sonesta; it does not purport to require arbitration of EEOC enforcement actions.  Therefore, Plaintiff has not established any substantive unconscionability based on this example. As to Plaintiff's PAGA example, Plaintiff has pointed to no case law suggesting that this issue (which is addressed below in the Court's discussion of the *Viking River*) is appropriately addressed within the framework of unconscionability.  Therefore, the Court finds that Plaintiff has failed to demonstrate any substantive unconscionability.

In the absence of substantive unconscionability, the Court finds that the Arbitration Agreement is not invalid due to unconscionability.  Further, Plaintiff does not dispute that her claims fall within the scope of the Arbitration Agreement.  Therefore, the requirements of § 2 of the FAA are satisfied.

### B. Implications of *Viking River* for Plaintiff's PAGA Claim

#### 1. Legal Standards Governing PAGA Waivers in Arbitration Agreements

PAGA authorizes any "aggrieved employee" to initiate an action against a former employer "on behalf of himself . . . and other current or former employees" to obtain civil penalties that otherwise can be "recovered only by the State" in an enforcement action brought by California's Labor and Workforce Development Agency ("LWDA"). *Viking River*, 142 S. Ct. at 1914 (quoting Cal. Lab. Code Ann. § 2699(a)). In *Viking River*, the Supreme Court considered whether the FAA preempts the rule adopted by the California Supreme Court in *Iskanian*, providing that waivers of the right to bring representative PAGA claims are invalid as a matter of public policy.

The *Viking River* Court explained that PAGA claims are "representative" in two ways: first, all PAGA actions are "representative" in the sense that they are brought by employees acting as agents or proxies of the State. *Id*. at 1916.  Second, some PAGA actions are "representative" in the sense that they are brought by employees acting on behalf of other employees in addition to themselves. *Id*.  The court in *Iskanian* adopted a rule for each use of "representative."  *Id.* As to

9

representative actions as used in the first sense, the *Iskanian* court held, in what the *Viking River* Court described as *Iskanian*'s "principal rule," that waivers of representative PAGA claims are prohibited. *Id.* *Iskanian*'s "secondary rule" related to the use of representative in the second sense, prohibiting the separation of individual and non-individual PAGA claims. *Id*. at 1916–17. In *Viking River*, the Supreme Court upheld *Iskanian*'s first rule, finding that it was not preempted by the FAA. *Id*. at 1925–26. However, it found that *Iskanian*'s secondary rule *was* preempted by the FAA "insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate." *Id*. at 1925.

In *Viking River*, the parties had entered into an agreement that included a class action waiver "providing that in any arbitral proceeding, the parties could not bring any dispute as a class, collective, or representative PAGA action." *Id*. at 1916. The agreement also contained a severability clause "specifying that if the waiver was found invalid, any class, collective, representative, or PAGA action would presumptively be litigated in court" but that "if any 'portion' of the waiver remained valid, it would be 'enforced in arbitration.'" *Id.* The lower courts held under *Iskanian* that the arbitration provision was invalid and that the individual and non-individual PAGA claims could not be split into arbitrable and nonarbitrable claims. *Id.* The Supreme Court, however, disagreed in part, finding that the individual PAGA claims were subject to arbitration, explaining its conclusion as follows:

> We hold that the FAA preempts the rule of *Iskanian* insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate. This holding compels reversal in this case. The agreement between Viking and Moriana purported to waive "representative" PAGA claims. Under *Iskanian*, this provision was invalid if construed as a wholesale waiver of PAGA claims. And under our holding, that aspect of *Iskanian* is not preempted by the FAA, so the agreement remains invalid insofar as it is interpreted in that manner. But the severability clause in the agreement provides that if the waiver provision is invalid in some respect, any "portion" of the waiver that remains valid must still be "enforced in arbitration." Based on this clause, Viking was entitled to enforce the agreement insofar as it mandated arbitration of Moriana's individual PAGA claim. The lower courts refused to do so based on the rule that PAGA actions cannot be divided into individual and non-individual claims. Under our holding, that rule is preempted, so Viking is entitled to compel arbitration of Moriana's individual claim.

10

*Id.* at 1924-1925.

The Court went on to address "what the lower courts should have done with [the plaintiff's] non-individual claims." *Id.* at 1925. It recognized that because the "primary rule" of *Iskanian* was not preempted, the non-individual claims could not be "dismissed simply because they [were] 'representative.'" *Id.* Nonetheless, the Court found that "PAGA provides no mechanism to enable a court to adjudicate non-individual PAGA claims once an individual claim has been committed to a separate proceeding." In particular, it reasoned, "[u]nder PAGA's standing requirement, a plaintiff can maintain non-individual PAGA claims in an action only by virtue of also maintaining an individual claim in that action." *Id.* (citing Cal. Lab. Code Ann. §§ 2699(a), (c)). Thus, the Court found, "[w]hen an employee's own dispute is pared away from a PAGA action, the employee is no different from a member of the general public, and PAGA does not allow such persons to maintain suit." *Id.* (citing *Kim v. Reins Int'l California, Inc*., 9 Cal. 5th 73, 90 (2020) ("PAGA's standing requirement was meant to be a departure from the 'general public' . . . standing originally allowed" under other California statutes)). The Court therefore concluded that the plaintiff "lack[ed] statutory standing to continue to maintain her non-individual claims in court, and the correct course is to dismiss her remaining claims." *Id.*

In her concurrence, Justice Sotomayor made clear that the understanding of California law relating to standing set forth in the majority opinion was a question to be decided by California courts, explaining:

> The Court concludes that the FAA poses no bar to the adjudication of respondent Angie Moriana's "non-individual" PAGA claims, but that PAGA itself "provides no mechanism to enable a court to adjudicate non-individual PAGA claims once an individual claim has been committed to a separate proceeding." . . . Thus, the Court reasons, based on available guidance from California courts, that Moriana lacks "statutory standing" under PAGA to litigate her "non-individual" claims separately in state court. . . . Of course, if this Court's understanding of state law is wrong, California courts, in an appropriate case, will have the last word. Alternatively, if this Court's understanding is right, the California Legislature is free to modify the scope of statutory standing under PAGA within state and federal constitutional limits.

*Id.* at 1925-1926.

Since *Viking River* was decided, at least one California court has found that the Supreme

11

1    Court's standing analysis was dicta but declined to reach whether its reading of California law was

2    correct. *See Chris Mills v. Facility Solutions Group, Inc.*, 2022 WL 16569298, at *12 (Cal. Ct.

3    App. Nov. 1, 2022).   Two judges in this district have compelled arbitration of individual PAGA

4    claims while staying –rather than dismissing – the non-representative claims.  *See Martinez-*

5    *Gonzalez v. Elkhorn Packing Co., LLC*, No. 18-CV-05226-EMC, 2022 WL 10585178, at *12

6    (N.D. Cal. Oct. 18, 2022) (staying representative claims); *Shams v. Revature LLC*, No. 22-CV-

7    01745-NC, 2022 WL 3453068, at *2 (N.D. Cal. Aug. 17, 2022) (declining to dismiss

8    representative claims) and No. 22-CV-01745-NC, dkt. 24 (N.D. Cal. Sept. 28, 2022) (staying

9    representative claims following further briefing).  A number of judges in other districts in

10   California have compelled arbitration of individual PAGA claims and dismissed the representative

11   PAGA claims, finding *Viking River* to be binding on the question of PAGA standing.  *See, e.g.,*

12   *Carlos Rivas v. Coverall N. Am., Inc*., No. SACV181007JGBKKX, 2022 WL 17960776, at *4

13   (C.D. Cal. Nov. 28, 2022) (Bernal, J.); *Hansber v. Ulta Beauty Cosms*., LLC, No. 121 CV

14   00022AWICDB, 2022 WL 16836627, at *7 (E.D. Cal. Nov. 9, 2022) (Ishii, J.); *Johnson v. Lowe's*

15   *Home Centers, LLC*, No. 221CV00087TLNJDP, 2022 WL 4387796, at *4 (E.D. Cal. Sept. 22,

16   2022) (Nunley, J.); *Radcliff v. San Diego Gas & Elec. Co*., No. 20-CV-1555-H-MSB, 2022 WL

17   4229305, at *2 (S.D. Cal. Sept. 12, 2022) (Huff, J.).

18   **2. Discussion**

19   There is little doubt that under *Viking River*, the individual PAGA claim asserted by

20   Plaintiff in this case is subject to arbitration.  On the other hand, because *Iskanian*'s primary rule,

21   prohibiting the wholesale waiver of PAGA claims, is not preempted, the portion of the Arbitration

22   Agreement that purports to waive Plaintiff's non-individual claim is invalid.  The only remaining

23   question is whether the non-individual claim should be dismissed or stayed.  While district courts

24   in California have taken different approaches to this question, the undersigned finds the reasoning

25   in *Martinez-Gonzalez v. Elkhorn Packing Co., LLC* to be persuasive and therefore finds that a stay

26   of the non-individual claim is appropriate. *See* No. 18-CV-05226-EMC, 2022 WL 10585178, at

27   *12 (N.D. Cal. Oct. 18, 2022).

28   In *Martinez-Gonzalez*, the court found that the plaintiff's individual PAGA claim was

subject to arbitration but his non-individual PAGA claim was not, and went on to hold as follows:

> [T]he survival of a substantive representative PAGA claim raises the question of whether the Plaintiff herein has standing to enforce that claim in this court given his individual PAGA claim is now remitted to arbitration. *Id.*
>
> The court in *Viking River* assumes he does not. *Id.* However, as Justice Sotomayor notes in her concurrence, the issue of statutory standing under PAGA is subject to clarification under state law. *Id.* ("Thus, the Court reasons, based on available guidance from California courts, that [Plaintiff] lacks 'statutory standing' under PAGA to litigate her 'nonindividual' claims separately in state court. Of course, if this Court's understanding of state law is wrong, California courts, in an appropriate case, will have the last word."). Indeed, the California Supreme Court has taken up the issue of statutory standing in the pending case *Adolph v. Uber Technologies, Inc*., No. G059860, 2022 WL 1073583 (Cal. Ct. App., Apr. 11, 2022), review granted (Cal. July 20, 2022). Accordingly, the Court will stay the representative PAGA claims pending further legal developments. *See George v. Manheim Invs., Inc*., 731 F. App'x 624, 627 (9th Cir. 2018) (permitting the California district court to stay the case pending the resolution of a California Supreme Court decision that may inform the district court's reasoning on a threshold issue).

WL 10585178, at *12 (N.D. Cal. Oct. 18, 2022). For the same reason, the Court here concludes that a stay of Plaintiff's non-individual PAGA claim is appropriate.[2]

## IV.     CONCLUSION

For the reasons stated above, the Court GRANTS the Motion in part and compels arbitration of all of Plaintiff's claims except her non-individual PAGA claim. The Motion is

---

[2] The Court notes that some judges have declined to enter a stay pending the Supreme Court's review of *Adolph*, citing the fact that the stay might be indefinite. *See Hansber v. Ulta Beauty Cosms., LLC*, No. 121CV00022AWICDB, 2022 WL 16836627, at *7 (E.D. Cal. Nov. 9, 2022) ("despite Plaintiffs' contention that the California Supreme Court is expected to clarify the PAGA standing issue in *Adolph*, the Supreme Court's decision in *Viking River* is on point in this matter, and this Court has no assurances of when *Adolph* will be decided. The Court 'declines to issue an indefinite stay of months, or possibly years, on the possibility that the California Supreme Court's interpretation of statutory standing will differ from the interpretation articulated in [*Viking River*].'") (quoting *Radcliff v. San Diego Gas & Elec. Co*., No. 20-CV-1555-H-MSB, 2022 WL 4229305, at *4 (S.D. Cal. Sept. 12, 2022)). "Generally, stays should not be indefinite in nature." *Dependable Highway Exp., Inc. v. Navigators Ins. Co*., 498 F.3d 1059, 1066 (9th Cir. 2007). This rule does not preclude a stay simply because the exact timing of the event upon which a stay is conditioned is unknown, however. Here, the California Supreme Court has accepted review in *Adolph* and briefing has been completed. While the decision may not issue for many months, there is a significant likelihood that the California Supreme Court will, in fact, issue a decision in *Adolph* that will provide important guidance with respect to how the representative PAGA claims should be handled. The Court concludes, therefore, that the length of the stay is not indefinite.

DENIED as to Sonesta's request that the Court dismiss the non-individual PAGA claim. Instead, that claim shall be stayed pending the resolution of *Adolph* by the California Supreme Court. The parties shall promptly notify the Court when the *Adolph* decision has issued or, in the event that that case is dismissed without issuance of a substantive decision, when that case is dismissed.

**IT IS SO ORDERED.**

Dated: January 3, 2023

_____
JOSEPH C. SPERO
Chief Magistrate Judge